Judge Underwood
delivered the opinion of the court.
Jonathan Taylor made a will, devising the principal part of his estate tp Lusk,. He made a provision for his wife, the appellant, by allowing her to occupy the dwelling house for life, and requiring that she should have a maintenance out of the proceeds of the farm. If his wife thought proper to renounce the provisions made for her in the will, he directed that ‘‘all his estate, after the assignment of her dower, should vest immediately and absolutely in Lusk.” The land and slaves, which might be assigned to the widow as her dower, were, after her death, in like manner to vest in said Lusk.
The widow, within the year, renounced the provisions made for her by the will. It seems that four persons, styling themselves “commissioners appointed by the Garrard county court, at their May terin, *637 1829, to allot Mrs. Nelly Taylor her dower, &c.” made a report to said court, at the July term, 1829, describing certain land and slaves which they had assigned to the appellant, as her dower in the estate of Jonathan Taylor, deceased.
When the order appointing commissioners to assign dower does not appear in the record, but the bill of exceptions acknowledges that such an order was made, and does not question it: legality, it will be taken to have been such an order a* the law requires.
The appellant, by her counsel, moved to quash and set aside the report, “because she was excluded ' from the mansion-house, and for other manifest errors therein,” but the court overruled the motion, and ordered the report to be recorded.
Tbe legality of the proceedings of the county court are now questioned, and various errors are assigned. We shall notice such as we deem of importance.
Tt is insisted that the whole proceedings should be set aside, because it does not appear that the persons who made the report had ever been appointed to discharge that duty by the county court, and because, conceding that they had been so appointed, it does not appear that the order was made on the application of the widow, or any other person Whose duty it was to apply for their appointment.
The order, appointing the commissioners, is not Copied in the present record. We cannot, therefore, decide whether it exhibits, on its face, a conformity with the requirements of the law. Were'it before us, and was found to be amenable to the objections taken in the case of Smith and ux. vs. Maxwell, III Litt. 471, we should pronounce the proceedings irregular, and reverse them. But situated as the record is, we regard the appellant as having sanctioned the appointment of the commissioners, and that no question can now be made touching the original order. The appellant’s bill of exceptions admit that the commissioners were appointed at the May term, 1829. Her only reasons relied on for quashing the report were, the failure to allot to her the mansion-house, and “other errors apparent upon its face.” The bill of exceptions makes no question as to the legality of the original order, and as it does not present us a copy, after acknowledging its existence, we shall take it to have been such as the law requires.
That the mansion-house is not •allotted to the ifiidow is insufficient ground for quaahal of report of commissioners, making an assignment of (low* <*r.
Jf widow gets an equal third part, in value, of the Sand, it is all of the land which the Saw gives her, and she can-no matter where i> may hm- ^Lw*0 givés her no preference over the heirs or devisees.
per-on-il'representative refuses to ass^gmnpnt'oi dower out of the slaves, ^urTahonld not "assign to the widow her dower in j^snc^c-ise her remedy is in chancery, When executstrator eonsents to the . assignment of dower in the slaves, the count;, court may cause the assignment to be made.
*638 We perceive no sufficient reason for quashing the report, because the mansion-house was not allotted to the widow. If she obtained an equal third part in value of the land, it is all the law gives, and she cannot complain, no matter where it is laid off to her. The law gives her no perference over the heirs or devisees.
It is said that the county court had no jurisdiction to assign the widow her dower in this case, because the estate passed to Lusk, as devisee. It is,moreover, contended that the county court could not assign the dower in slaves, because the interest-of the widow in this kind of property is contingent, dependant upon how many are left after the payment of debts. Williams vs. Williams, I J. J. Marshall, 106; Hawkins &c. vs. Page’s heirs, IV Mon. 136, and Rintch vs. Cunningham, IV Bibb, 462, are cited to sustain these positions. These cases do not support the argument. They proye that where the husband has alienated in his life time, or where he holds but an equity, (and eonse* quently does not die seized) or where the right to dower is denied, the county courts are not oompeter,t’ un<*er the aci *803, to settle the controversy and allot the dower. But they do not touch a case where the husband died seized, and where there js n0 dispute as to the widow’s right. Such seems fco bg the pregent case.
The propriety of the county court proceeding uncler the act of 1803, I Dig. 446, to assign dower in slaves, when the personal representative refuses his assent, may well be questioned. Where the ex-ecntor or administrator refuses, the widow’s remedy is in chancery. There the questions can be fairly settled. If the rights of creditors will not thereby prejudiced, the widow should be allowed dower in the slaves. This remedy is indicated by statute, II Dig. 1153. But if the executor or administrator consents to the assignment of dower in the slaves, there is then no question as to the widow’s right, and we think county courts may lawfully appoint commissioners to make it, under the act of 1803, rpj terms of that act are broad enough to embrace the case, and no good reason lor going into a court *639 when the right is ad•ef chancery can he assigned, initted. This view is fortified by the 4th section of an act of 1811, II Dig. 837, placing slaves upon the same footing with land, in respect to its division amongst the heirs, by commissioners appointed by the.county court, when the personal representative assents. We see no reason why such commissioners may not assign dower as well as divide amongst the heirs. We believe it has long been the practice, under these statutes, to appoint commissioners to assign dower in slaves, where the personal representative consents. In this case, Lusk is executor, and we know his assent from' his resisting the reversal.
In assignment" of dower in sla\ es, an allowance of a sun. oi money to the wmow, to make htr share of the slaves equal a full third, is not error.
The remaining enquiry is, whether there be any -errors manifest upon the face of the report, for which it ought to have been quashed. It is said there are two; 1st, the allowance of $60 to make the widow’s share of the slaves equal a full third, and, 2nd, the postponement of the enjoyment of her dower until the end of thq^'car. Upon the first .point it is argued, that if the widow cannot get her full share precisely in the allotment of slaves, it ought to be made up to her in alloting such a portion of the services and time of one or more of the slaves as will give her a third, and that she ought not to be compensated in money. We think it amounts substantially to the same thing. The services and time of a slave produce money, and can be purchased with money, and when any little deficiency in the share of a widow is made up in Ktoney, it is giving her that which commands the services of slaves, and constitutes a fair equivalent for what she cannot get in kind, because of the impossibility of making the allotment exactly equal, according to the requirements of the law. Where the widow gets money to make up any deficiency in ber share, her dower estate may terminate before the hire of a slave assigned to her every other day, or every third day, month or year, under the principles contended for, would equal the amount of money'received. In this case the widow might be said to get too much. If she lived a long time, and the hire of the slave assigned as above would over-go the money received, it might be said she did not *640 get enough. These inequalities are generally trifling, and if exact equality must be the inflexible rule, it would tend to prevent any allotment in severalty, and require that all the slaves should be held alternately, or hired out, and the proceeds divided; for if a division is made, casualty, sickness, or death may make the different lots flagrantly unequal the day after.
Husband died iu Aori), and dower was assigned to widow in July ensuing, but the report of the commissioners making the assignment, postponed her in the enjoyment of her dower until end of the year, decided not to be error; because she is indemnified by her distributive Share of the crop.
Owsley and Turner, for plaintiff; Crittenden,, for defendant.
Besides, there are inconveniences resulting from the alternate use of a slave, which render it more beneficial to have the inequalities in lots made up in money. V! e do not look upon the assignment of dower as precisely analogous to the case of joint tenants, by purchase, owning a single slave, and who will not make partition by sale, and division of the money.
There is nothing in the objection that the widow’s right to take possession of the dower property was postponed until the end of the year. The will bears date on the 1st of Jtffil, 1829. The widow renounced the provisions made for her in the will on the 2nd of May, 1829. The testator must have died between these dates, and from the time he died, the law required that the slaves should be kept to cultivate the crop, &c. until the end of the year. The widow is indemnified for all this in her distributable share ot the crop. See I Dig. 531.
Upon consideration of all the points, the judgment of the county court is affirmed, with costs.